UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RUSSELL TUREK, Individually and for Others Similarly Situated, <br><br> v. <br><br> PHILLIPS 66 COMPANY | Case No. _____ <br><br> Jury Trial Demanded <br><br> FLSA Collective Action Pursuant to § 216(b) |

# ORIGINAL COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Russell Turek (Turek) brings this lawsuit to recover unpaid overtime wages and other damages from Phillips 66 Company (P66) under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*.

2. Turek worked for P66 as a Construction Field Representative (CFR).

3. Turek and the Day Rate CFRs (defined below) regularly worked more than 40 hours a week.

4. But P66 did not pay them overtime.

5. Instead of paying overtime as required by the FLSA, P66 classifies its CFRs as independent contractors, and they are paid a flat amount for each day worked (a "day rate") without overtime compensation.

6. Turek or the Day Rate CFRs never received a guaranteed salary.

7. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. Venue is proper under 28 U.S.C. § 1391(b)(2) because P66 maintains its headquarters in this District and Division.

10. Specifically, P66 maintains its headquarters in Houston, Texas.

## PARTIES

11. Turek worked for P66 as a CFR from approximately May 2011 until July 2020.

12. Throughout his employment, P66 classified Turek as an independent contractor and paid him a flat daily rate for each day worked regardless of the total hours worked in a work week ("day rate pay plan").

13. In fact, Turek was P66's employee.

14. Turek's consent to be a party plaintiff is attached as Exhibit 1.

15. Turek brings a FLSA collective action on behalf of himself and all other Day Rate CFRs who were paid according to P66's day rate pay plan.

16. P66 classified each of these workers as independent contractors and they were paid a flat amount for each day worked and failed to pay them overtime for hours worked in excess of 40 in a workweek.

17. The collective of similarly situated employees or Day Rate CFRs sought to be certified is defined as follows:

> **All current and former Construction Field Representatives (CFRs) who worked for, or on behalf of, Phillips 66 Company (P66), who were paid a day rate with no overtime at any time in the last 3 years (the "Day Rate CFRs").**

18. The Day Rate CFRs can be readily ascertained from P66's records.

19. P66 may be served with process by serving its registered agent: **Corporate Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 7th Street, Suite 620, Austin, Texas 78701**.

**FLSA COVERAGE**

20. At all relevant times, P66 has been an employer within the meaning of section 3(d) of the FLSA. 29 U.S.C. § 203(d).

21. At all relevant times, P66 has been part of an enterprise within the meaning of section 3(r) of the FLSA. 29 U.S.C. § 203(r).

22. At all relevant times, P66 has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

23. At all relevant times, P66 has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, smart phones/devices, badges, uniforms, computers, personal protection equipment, etc.) that have been moved in or produced for commerce.

24. In each of the past 3 years, P66's annual gross volume of sales has exceeded $1,000,000 for at least the past 3 years.

25. At all relevant times, Turek and the Day Rate CFRs were engaged in commerce or in the production of goods for commerce.

26. P66 uniformly applied its policy of paying its CFRs, including Turek, a day rate with no overtime compensation.

27. P66 applied this policy regardless of any alleged individualized factors such as geographic location.

28. By paying its CFRs a day rate with no overtime compensation, P66 violated (and continues to violate) the FLSA's requirement that it pay employees at 1½ times their regular rates for hours worked in excess of 40 in a workweek.

29. As a result of P66's day rate pay plan, Turek and the Day Rate CFRs do not receive overtime as required by the FLSA.

30. P66's day rate pay plan is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

31. P66 treated Turek and the Day Rate CFRs as employees and uniformly dictated the pay practices applied to Turek and the Day Rate CFRs.

32. P66's misclassification of Turek and the Day Rate CFRs as independent contractors does not alter their status as employees for purposes of the FLSA.

## FACTUAL ALLEGATIONS

33. P66 is one of the largest global energy companies in the world.

34. To complete its business objectives, P66 hires CFRs, such as Turek, to perform services for its oil and gas projects across the country.

35. Many of these individuals worked for P66 on a day rate basis (without overtime pay) and were classified as independent contractors.

36. These workers make up the proposed collective of Day Rate CFRs.

37. P66 does not hire Turek or the Day Rate CFRs on a project-by-project basis.

38. Rather, P66 hires and treats these CFRs just like regular, even if sometimes short term, employees.

39. Without the job performed by Turek and the Day Rate CFRs, P66 would not be able to complete its business objectives.

40. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

41. For example, Turek worked for P66 as an CFR from approximately May 2011 until July 2020.

42. Throughout Turek's employment with P66, P66 classified him as an independent contractor and he was paid on a day rate basis with no overtime compensation.

43. Turek and the Day Rate CFRs work for P66 under its day rate pay plan.

44. Turek and the Day Rate CFRs do not receive a guaranteed salary and are not paid on a salary basis.

45. If Turek and the Day Rate CFRs did not work, they did not get paid.

46. Turek and the Day Rate CFRs do not receive overtime pay.

47. This is despite the fact Turek and the Day Rate CFRs often work for 12+ hours a day, for up to 7 days a week, for weeks at a time.

48. Although Turek and the Day Rate CFRs typically worked up to 7 days a week, for 12+ hours a day, they did not receive any overtime pay.

49. Turek and the Day Rate CFRs received the day rate regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

50. Turek's work schedule is typical of the Day Rate CFRs.

51. P66 knows Turek and the Day Rate CFRs work for 12+ hours a day, for up to 7 days a week.

52. Turek and the Day Rate CFRs worked in accordance with the schedule set by P66.

53. P66's records reflect the fact that Turek and the Day Rate CFRs regularly work far in excess of 40 hours in certain workweeks.

54. Turek or the Day Rate CFRs do not receive any overtime for the hours they worked in excess of 40 in any workweek.

55. Instead, Turek and the Day Rate CFRs are paid on a day rate basis.

56. Turek and the Day Rate CFRs are not employed or paid on a salary basis.

57. Turek and the Day Rate CFRs do not, and have never, received guaranteed weekly compensation irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

58. P66's policy of paying Turek and the Day Rate CFRs a day rate with no overtime compensation violates the FLSA because it deprives Turek and the Day Rate CFRs of overtime for the hours they work in excess of 40 hours in a single workweek.

59. P66 knew Turek and the Day Rate CFRs worked more than 40 hours in a week.

60. P66 controls Turek and the Day Rate CFRs' work.

61. P66 requires Turek and the Day Rate CFRs to follow P66's policies and procedures.

62. Turek and the Day Rate CFRs' work must adhere to the quality standards put in place by P66.

63. Turek and the Day Rate CFRs are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

64. As a CFR, Turek was responsible for acting as P66's on-site representative and ensuring P66's projects are completed in accordance with P66's policies, procedures, standards, and specifications, and providing P66 with daily reports of his observations on P66 forms.

65. All of the Day Rate CFRs perform similar duties of acting as P66's on-site representative and ensuring P66's projects are completed in accordance with P66's policies, procedures, standards, and specifications, and providing P66 with daily reports of his observations on P66 forms.

66. As a result, Turek and the Day Rate CFRs do not exercise independent judgment or discretion as to matters of significance.

67. Turek and the Day Rate CFRs must follow P66's policies and procedures and adhere to P66's quality standards.

68. Turek and the Day Rate CFRs did not substantially invest in the tools required to complete the overall job to which they were assigned.

69. Turek and the Day Rate CFRs did not incur operating expenses like rent, payroll, marketing, and/or insurance.

70. Turek and the Day Rate CFRs did not market their services while employed by P66.

71. Turek and the Day Rate CFRs did not and could not subcontract out the work they were assigned by P66.

72. Turek and the Day Rate CFRs relied on P66 for work and compensation.

73. P66 set Turek and the Day Rate CFRs' work schedule, which prohibited them (formally and/or practically) from working other jobs for other companies while working for P66.

74. At all relevant times, P66 maintained control, oversight, and direction of Turek and the Day Rate CFRs, including but not limited to hiring, firing, disciplining, timekeeping, and other employment practices.

75. Turek's working relationship with P66 is similar to P66's relationship with its other Day Rate CFRs.

76. The Day Rate CFRs do not manage general business operations of P66.

77. P66 knew, or showed reckless disregard for whether, the Day Rate CFRs were entitled to overtime under the FLSA.

78. Nonetheless, P66 failed to pay Turek and the Day Rate CFRs overtime.

79. P66 knowingly, willfully, or in reckless disregard carried out this illegal day rate pay plan that deprived Turek and the Day Rate CFRs of overtime compensation in violation of the FLSA.

80. P66 has been sued before for paying its CFRs a day rate with no overtime compensation in violation of the FLSA. *See Hester v. Phillips 66 Company, et al.*, No. 4:18-CV-01078 (S.D. Tex. 2018).

81. P66 has been sued before for its illegal day rate with no overtime pay practices. *Id.*; *see also Hinkle v. Phillips 66 Company*, No. 4:20-CV-022 (W.D. Tex. 2020).

82. P66's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay these employees overtime made in good faith.

### COLLECTIVE ACTION ALLEGATIONS

83. Turek brings this claim as a collective action under the FLSA.

84. The Day Rate CFRs were victimized by P66's day rate pay plan which is in willful violation of the FLSA.

85. Other Day Rate CFRs worked with Turek and indicated they were classified as independent contractors, paid in the same manner (a day rate with no overtime), and performed similar work.

86. Based on his experiences with P66, Turek is aware that P66's illegal day rate pay plan was imposed on the Day Rate CFRs.

87. The Day Rate CFRs are similarly situated in all relevant respects.

88. Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

89. The illegal day rate pay plans P66 imposed on Turek were imposed on all Day Rate CFRs.

90. Like Turek, the other Day Rate CFRs are denied overtime when they work more than 40 hours per week.

91. The overtime owed to Turek and the Day Rate CFRs will be calculated using the same records and the same formula.

92. Turek's experiences are therefore typical of the experiences of the Day Rate CFRs.

93. The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

94. Turek has no interest contrary to, or in conflict with, the Day Rate CFRs that would prevent collective treatment.

95. Like all Day Rate CFRs, Turek has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

96. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

97. Absent a collective action, many Day Rate CFRs will not obtain redress of their injuries, and P66 will reap the unjust benefits of violating the FLSA.

98. Further, even if some of the Day Rate CFRs could afford individual litigation against P66, it would be unduly burdensome to the judicial system.

99. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Day Rate CFRs, as well as provide judicial consistency.

100. Turek and the Day Rate CFRs sustained damages arising out of P66's illegal and uniform employment policy.

101. Turek knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

102. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to P66's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

103. Consistent with P66's illegal day rate policy, Turek and the Day Rate CFRs were not paid overtime when they worked more than 40 hours in a workweek.

104. As part of their regular business practices, P66 intentionally, willfully, and repeatedly applied its day rate pay plan to Turek and the Day Rate CFRs.

105. P66's illegal day rate pay plan deprived Turek and the Day Rate CFRs of the premium overtime wages they are owed under federal law.

106. P66 is aware, or should have been aware, that the FLSA required it to pay Turek and the Day Rate CFRs overtime premiums for hours worked in excess of 40 in a workweek.

107. There are many similarly situated Day Rate CFRs who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

108. The other Day Rate CFRs are known to P66, are readily identifiable, and can be located through P66's records.

## CAUSE OF ACTION
## FLSA VIOLATION

109. P66's day rate pay plan violates the FLSA because Turek and the Day Rate CFRs did not receive overtime pay for hours they worked in excess of 40 in a week.

110. P66 knew, or showed reckless disregard for whether, its day rate pay plan violated the FLSA.

111. P66's failure to pay overtime compensation to the Day Rate CFRs was not based on any reasonable interpretation of the law.

112. Nor was P66's decision not to pay its Day Rate CFRs overtime made in good faith.

113. Accordingly, Turek and the Day Rate CFRs are entitled to recover their unpaid overtime under the FLSA, liquidated damages, attorneys' fees, and costs.

## JURY DEMAND

114. Turek demands a trial by jury.

## RELIEF SOUGHT

115. Wherefore, Turek prays for:

(a) an order allowing Turek's FLSA claims to proceed as a collective action and directing notice to the other Day Rate CFRs pursuant to § 216(b) of the FLSA;

(b) judgment finding P66 in violation of the FLSA;

(c) judgment finding P66 liable to Turek and the Day Rate CFRs for unpaid overtime, and an equal amount of liquidated damages;

(d) judgment awarding Turek and the Day Rate CFRs reasonable attorneys' fees and costs of this action;

(e) judgment awarding Turek and the Day Rate CFRs pre- and post-judgment interest at the highest rates allowed by law; and

(f) such other and further relief as may be necessary and appropriate.

Respectfully submitted,

**JOSEPHSON DUNLAP, LLP**

By: */s/ Michael A. Josephson*
    **Michael A. Josephson**
    TX Bar No. 24014780
    Federal ID No. 27157
    **Andrew W. Dunlap**
    TX Bar No. 24078444
    Federal ID No. 1093163
    **Taylor A. Jones**
    TX Bar No. 24107823
    Federal ID No. 3348814
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    tjones@mybackwages.com

    **AND**

    **Richard J. (Rex) Burch**
    TX Bar No. 24001807
    Federal ID No. 21615
    **BRUCKNER BURCH, PLLC**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**